Singleton, Judge:
This claim was filed with the office of the Attorney General of West Virginia, on June 27, 1967, subsequently transferred to this Court on July 1, 1967, and the evidence of claimant and respondent taken by this Court at a hearing held on April 10, 1968.
This claim is in the amount of $15,380.17, the sum of $8,097.25 thereof being admitted by the State to be due the claimant in accordance with the final estimate prepared by the State Road Commission on the project in question; and the sum of $7,282.92 *134 claimed as compensation for extra work performed and equipment and material furnished by claimant for flood clean-up operations on the project as ordered by the State Road Commission. Claimant had been awarded a contract for excavating, draining, grading and surfacing approximately 2.8 miles of the Bramwell, West Virginia-Virginia State Line Road in Mercer County, West Virginia, Project S-647-1, said contract being dated November 21, 1955. The work for which additional compensation is claimed resulted from a flooding by the Bluestone River in late January and early February of 1957. Claimant had completed all sub grade work and removed his equipment from the project in December of 1956, contemplating a resumption of work on the project as soon as weather permitted in 1957. The claimant testified in person and submitted as documentary evidence the daily work report sheets covering the emergency flood clean-up work, this work having been done during the period from February 26, 1957, through March, 1957. Claimant’s superintendent on the project who prepared the daily report sheets also testified in behalf of the claimant. Claimant testified that Mr. Scott Blankenship of the State Road Commission District Office in Princeton met with him at the project site in early February, requested that he return with his crew to remove the flood debris that had accumulated on the project and around a bridge over the Bluestone River near Bramwell, advising that the State Road crew themselves were unable to do all of the work involved and were needed elsewhere in the District; that he should keep a record of the expenses involved and turn the same in as a “force account” for payment. No executed force account work order was ever delivered to the claimant by the State Road Commission for the work involved, but claimant’s evidence is to the effect that he proceeded to move his men and equipment on the. job and to perform the work outlined by Mr. Blankenship. Mr. Blankenship was summoned as a witness by claimant and appeared in response to said summons. The attorney for the claimant thereafter advised the Court that he had interviewed Mr. Blankenship and that Mr. Blankenship said that inasmuch as the events had occurred over eleven years ago that he could not recollect the pertinent details and felt that he could contribute no information concerning this claim. Mr. Blankenship was, therefore, not called as a witness by the claimant, nor was he called as a witness by the respondent. *135 Claimant further offered in evidence (filed as Exhibit A with his Petition) a complete breakdown of the accounts for labor, material, equipment and overhead constituting the $7,282.92, claim for extra work.
The evidence for the respondent consisted of the testimony of Mr. Levi Scott, now retired, formerly respondent’s inspector on the project in question, and (Respondent’s Exhibit No. 1) the official diary maintained by Mr. Scott for the project covering the period in question. The official diary and the daily reports submitted by claimant (Claimant’s Exhibit No. 1) at first glance appear to be completely conflicting for the days in question, but a careful day-by-day examination of same by the Court indicates that they coincide in the majority of instances for the work that was done on any particular day during this period and are identical in reflecting the visits of State Road Commission officials and engineers to the project. Mr. Scott’s testimony corroborated the occurrence of the flood but tended to minimize the damage caused thereby and any extra work involved on the part of claimant, it being the contention of the respondent that claimant was reimbursed for any such extra work through the unit price items of payment as set forth in the contract and final estimate and that particularly claimant was reimbursed for extra stone that had to be used to replace base stone spoiled or damaged by the flood.
The final voucher estimate covering this contract and setting forth the amount of $8,097.25 due the claimant by the respondent was introduced into evidence (Claimant’s Exhibit No. 2). It is apparent from the face of this estimate that the amount acknowledged to be due to the claimant by the respondent is made.up of the sum of $584.59 for a railroad liability insurance policy premium on Force Account No. 6, and the amount of $7,512.66 in retained percentage under the terms of the contract. The original contract in question was in the amount of $228,-417.05, with approved overruns in labor and quantities in the amount of $158,048.29, underruns of $10,247.47, resulting in a net final contract figure of $376,217.87.
No where on the face of the final estimate does it appear, despite the contention of the respondent, that any payment was made to the claimant for the extra work he did perform in *136 flood clean up. No evidence was offered by respondent to point out any of the items under the contract that had been increased in quantity with a resultant increase in payment to the claimant, as a result of claimant’s work and labor in flood clean up. Respondent witness Scott did testify that additional stone was used to replace stone in the road bed that had to be removed as a result of flood damage and that claimant was paid for this additional stone at the unit price under the contract. It should be pointed out that no item is included in this claim for any stone or for any material other than fuel for equipment use.
In comparing Claimant’s Exhibit A, filed with its petition, and Claimant’s Exhibit No. 1, admitted in evidence at the hearing, (the daily report sheets) the Court questions the propriety of charging the entire working day or longer in some instances of the project superintendent, R. C. Wetherall, solely to supervision of the flood clean-up work when, in fact, the daily report sheets and official diary (Respondent’s Exhibit No. 1) reflect that considerable work under the regular contract was carried on during these particular days. R. C. Wetherall also appears as a dozer operator on at least two days for a full days work, but his wage rate is extended at a rate in excess of that paid to the dozer operator by the claimant on the same exhibit. While no question concerning these discrepancies was raised at the hearing by either respondent or claimant, it is the Court’s duty and it has the authority to scrutinize the documentary evidence very closely.
After careful consideration of the evidence and exhibits of both claimant and respondent, this Court is of the opinion that the claimant, by a preponderance of the evidence, has proven that he actually did perform work and labor and furnish material at the request of the State Road Commission for emergency flood clean up over and above the work and labor contemplated under his contract with the State Road Commission for the improvement of the Bramwell, West Virginia-Virginia State Line Road, and that the final estimate as prepared by Respondent for this contract does not reflect that claimant was compensated for any of this extra work; and that claimant has established a claim before this Court that in equity and good conscience should be paid.
*137 The Court is of the opinion therefore to award to the claimant the sum of $5,506.55, for the emergency work performed in flood clean-up, the original amount of this flood clean-up claim having been reduced by this Court as a result of the Court’s question as to the propriety of certain labor charges made by the claimant in its exhibit A.
The claimant is therefore and he is hereby awarded the total sum of $5,506.55.